**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

CHRISTOPHER GRANT, individually and
On behalf of all others similarly situated

Plaintiff,

V.                                                          Case No:

STRADA SERVICES INC. d/b/a
Strada Electric and Security and
JOSEPH STRADA,

Defendants.

_____.

## FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CHRISTOPHER GRANT, individually, and on behalf of all others similarly situated, who consent to their inclusion in this collective action, brings this lawsuit pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), against Defendants, STRADA SERVICES INC., d/b/a Strada Electric and Security (a Florida registered fictitious name) (hereinafter "Strada") and JOSEPH STRADA (hereinafter, "Joseph Strada" and collectively with Strada, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* for failure to pay overtime compensation and a premium for all hours worked over forty (40) each week.

## INTRODUCTION

1.      The Fair Labor Standards Act is our nation's foremost wage law.  The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. § 202(a).  To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers.  29 U.S.C. §§ 206(a) and 207(a).  It requires minimum wage and overtime pay for certain non-exempt employees.  29 U.S.C. §213.

2.      Plaintiff, Christopher Grant ("Grant" or "Plaintiff") worked for Defendants from on or about July 2020 through the end of November 2020 from Defendants' Pensacola, Florida office. For the first 16 or 17 weeks of his employment, Plaintiff was in Defendants' training program working under the title of Trainee or Apprentice Installer.  After completing the training program, he went on to become an Electrician or Electrical Installer with Defendants.

3.      Defendants maintained a scheme to avoid its obligations to pay overtime wages to its non-exempt, labor workers and employees in order to save millions of dollars in labor costs and maximize profits, all to the detriment of its employees.

4.      Defendants shave or edit overtime hours from the employees' time records and also permits laborers and non-exempt employees to suffer to work off the clock.

5.      Defendants also discourage and take actions to intimidate and prevent full and accurate reporting of all work hours for all hourly workers and laborers, such as Plaintiff and other Trainees or Apprentice Installers.

6.      Plaintiff, like his fellow Trainees or Apprentice Installers, and who are members of this putative Class, worked at one of 22 or more locations throughout Florida and Alabama, ultimately overseen and reporting to Defendants at its corporate office located in Sanford Florida, and under the complete direction and control of the CEO, Joseph Strada.

7.      All Trainees or Apprentice Installers were paid on an hourly, non-exempt basis while in Defendants' training and/or Apprentice program, irrespective of the number of hours worked in any day or any work week.

8.      Defendants engaged in a willful scheme to avoid complying with the overtime wage requirements of the FLSA by willfully edited timesheets, and/or directly instructing and ordering Trainees or Apprentice Installers to clock out at the ending shift time while knowingly permitting them to work off the clock.

9.     Defendants thus violated the FLSA by refusing to pay all overtime compensation for overtime hours they knew or should have known were worked by Trainees or Apprentice Installers.

10.     Plaintiff, like his fellow Trainees or Apprentice Installers in the past three (3) years preceding the filing of this complaint, and still to this day, were systematically denied overtime pay for most if not all hours they worked in excess of forty (40) in any workweek on behalf of Defendants.

11.     Defendants maintained a common unlawful pay practice applicable to all Trainees or Apprentice Installers of shaving or editing off all work hours over forty (40) in each work week.

12.     Defendants also maintained an unlawful pay practice applicable to all Trainees or Apprentice Installers by instructing them to clock off at 3:30 pm, when their scheduled shift ended but requiring them to then continue to work off the clock, including using a threat of termination of their employment if they refused or failed to do so.

13.     The Defendants' time records are both falsified and inaccurate as to Plaintiff and all other Trainees or Apprentices of Defendants.

14.     Accordingly, Plaintiff, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, seek recovery of unpaid overtime wages from Defendants for their violations of the Fair

Labor Standards Act including: (1) willfully refusing to pay the Plaintiff and others similarly situated overtime compensation; and (2) willfully failing to maintain and preserve accurate and true records of all hours worked.

## FLSA CLASS DEFINITION AND RELIEF SOUGHT

15.    This collective action is to recover from Defendants overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiff and all similarly situated persons composed of: Trainees or Apprentice Installers

> All persons employed by or performing work for STRADA SERVICES INC. reporting to an office or location in Florida or Alabama, under an hourly compensation plan, under the titles of Trainee or Apprentice Installer and any other job titles previously or currently used to describe persons working on an hourly pay rate basis while in STRADA SERVICES INC's training or apprentice program in order to become a Helper, installer, technician, Rough and Trim Installer, Right and Trim Electrician, or electrician for STRADA SERVICES INC at any time within the three (3) years preceding this lawsuit to the day of trial.

## JURISDICTION AND VENUE

13.    This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, since this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C., §§201-219, inclusive.

14.    This Court has personal jurisdiction over this action because the Defendants are engaged in business within the State of Florida and within this District.

15.     Venue is proper in the Northern District of Florida pursuant to 28 U.S.C. §1391(b) since the acts complained of herein took place in this District.

16.     Upon information and belief, Defendants have revenues of $500,000.00 or more in the previous three (3) years and employ ten (10) or more employees.

17.     Plaintiff is engaged in interstate commerce, ordering and obtaining products and materials from across state lines, and then installing such products and materials.

18.     At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§206(a) and 207(a).

## THE PARTIES

19.     At all times relevant to this action, Representative Plaintiff Christopher Grant resided in Florida, and within this district, and at all times material, worked for Defendants as a Trainee or Apprentice Installer.

20.     Defendants are an employer as defined by 29 USC section 203d, as Defendants are directly involved in decisions affecting employee compensation and hours worked by the Plaintiff and all other similarly situated present and former employees. Defendants also directed the work and the day-to-day work activities of the Plaintiff and all others similarly situated, created the unlawful pay practices alleged, and enforced those pay practices.

21.     Defendant, Strada, is a Florida, for profit corporation with its principal place of business in Sanford, Florida located at 3400 ST. JOHNS PARKWAY, SANFORD, FL 32771.  Defendant may be served through its registered agent, owner and CEO, Joseph Strada at the same address.

22.     Defendant Joseph Strada, is the CEO of Strada and upon information and belief is the majority or sole shareholder of Strada Services Inc.  Joseph Strada is a resident of Florida and subject to the personal jurisdiction of this court.

23.     Defendant Joseph Strada also created and instituted and maintained the unlawful pay practices and schemes complained of herein, and was in charge of the day to day management of the company throughout the preceding 3 years to the present.

24.     Defendants own and do business under the Florida registered fictitious business name of Strada Electric and Security, and operate 22 offices throughout Florida and Alabama where similarly situated present and former employees worked from or reported to.

25.     Defendants operate a Statewide electrical contracting and Security Services Company throughout the State of Florida and Alabama from its corporate office located in Sanford, Florida.

26.     As per Defendants' website, Stradaelectric.com, the Defendants operate at least 22 offices throughout the State of Florida, in addition to offices in Houston, Texas, and Daphne, Alabama, within the relevant three-year class period.

27.     Defendants, upon information and belief, employed upwards of 200 or more employees, who, while in the training or apprentice program were called Trainees or Apprentice Installers.

## GENERAL FACTUAL ALLEGATIONS

28.     Plaintiff, like Defendants' other employees working under the job titles of Trainee or Apprentice Installer, was paid on an hourly basis while in Strada's Training or Apprentice program.

29.     Plaintiff was hired by Defendants and began Defendants' Training or Apprentice program in July 2020, working towards becoming an Electrician or Electrical Installer for Defendants.  The training program lasted 16 or 17 weeks, during which Plaintiff was paid on an hourly basis.  After completing the training program, Plaintiff was "certified" by Strada, his title became Electrician or Electrical Installer, and his compensation was changed to a piece rate based on the square footage of the house being worked on.

30.     During and after the training program, Plaintiff's job duties were to go to new home construction sites and wire the home and install outlets, fixtures, and other electrical materials and parts.

31.    Plaintiff is not a licensed, educated or degreed electrician and no such degree, education, diploma, or certification was required for Plaintiff to be hired in this position.

32.    Even though Plaintiff applied for a position as an "electrician", Defendant's job posting for "electrician" or "Residential Rough & Trim Electricians" in the exact same job posting, Defendants therein labels the position as "Residential Rough & Trim Installers" ... for all locations.

33.     More importantly, Plaintiff is neither by any educational requirement, licensure, or certification, an electrician, and upon information and belief, none of the people filling these positions are required to be licensed, educated, certified or degreed electricians.  The only relevant certification Plaintiff has is being "certified" by Strada after completing Strada's Training or Apprentice program.

34.    The position posted for "Electrician" or "Residential Rough & Trim Electrician" has only 1 requirement for applicants:  the "Ability to use hand and power tools properly."  Other work experience of 2 years is merely "preferred", and thus not required, and neither is any certification, licensure or degree as an electrician.

35.    Throughout plaintiff's employment, he routinely was required to work in excess of 40 hours per week without being paid or compensated any premium pay for said hours.

36.    Plaintiff and members of the putative class were scheduled to work Monday through Friday, 7:00 am to 3:30 pm.

37.    In order to complete the work and the jobs assigned to him by the Defendant, the Plaintiff routinely had to work more than 8 hours in a day and more than 40 hours in a week.

38.    Plaintiff was to record his work hours by clocking in and out of a smartphone app called Bolt.

39.    Defendants did not have the Plaintiff clock in and out his actual work hours.  Plaintiff's trainer and supervisor informed him and his training class to clock out at 3:30 pm, regardless of when they actually stopped working, and that if they did not start doing so then they would be terminated.

40.    Plaintiff and other Trainees or Apprentice Installers were regularly required to stay past the 3:30 pm scheduled end of shift by their Trainer Justin Eagle in order to complete the job they were working on.  Plaintiff and other Trainees or Apprentice Installers stayed because they were in a training class and were required to follow the directions given, otherwise they stood the risk of not completing the training program.

41.    Thus, Defendants were aware that Plaintiff and other Trainees or Apprentice Installers were working overtime hours as Plaintiff's supervisor was at

the jobsite along with Plaintiff and other Trainees or Apprentice Installers after the scheduled end of shift of 3:30 pm.

42.     Additionally, Plaintiff's supervisors and managers had the ability to change their reported work hours in Bolt, the app Plaintiff used to report his hours, and that Defendant's supervisors and managers did edit his reported hours in Bolt so that it did not reflect more than 40 hours in a workweek.

43.     These purported timesheets on Bolt are therefore inaccurate and unreliable as to the actual work hours of the Plaintiff and all others similarly situated.

44.     Upon completing the Strada training program, Plaintiff was "certified" by Strada, was moved to a piece rate basis form of compensation, and was issued the use of a company vehicle.

45.     Defendants maintained a GPS tracking system in the company vehicle provided to the Plaintiff to drive such that Defendants are actually aware of the true and accurate work hours of the Plaintiff which can be determined by the GPS records showing the time leaving the company Warehouse, arriving at the first job, and the completion or leaving the last job site.

46.     Throughout Plaintiff's employment, he was instructed that he had to work a minimum mandatory work schedule of Monday through Friday, 7 a.m. to 3:30 pm.

47.     At the request and requirement of Defendants, Plaintiff routinely worked in excess of 3:30 PM, even working into the evening hours.

48.     Defendants were fully aware and knew that Plaintiff was working more than 40 hours each week, including working beyond 3:30 pm.

49.     Defendants also were thus aware that the timesheets generated through Bolt contained false information of actual hours worked for Plaintiff and other Trainees or Apprentice Installers.

50.     For purposes of the collective action, Plaintiff Christopher Grant, by this Complaint, does hereby and herein gives his written consent to be a party to this action pursuant to 29 U.S.C. §216(b).

51.     At all times relevant to this action, Defendants were an employer of Plaintiff and all other Trainees and Apprentice Installers of this proposed FLSA collective action within the meaning of 29 U.S.C. §203(g).

52.     Defendants maintained an unlawful practice and policy of shaving and editing overtime hours, and/or commanding Trainees or Apprentice Installers to work off the clock through coercion, intimidation and blatant warnings of being terminated or laid off if they did not clock out and continue to work off the clock.

53.     Thus, over the preceding 3-year period to the present, Defendants have maintained an unlawful scheme to violate the overtime wage requirements of the

FLSA by knowingly requiring Plaintiff, and all other Trainees or Apprentice Installers to suffer to work off the clock.

54.     Defendants threatened, warned and attempted to intimidate Plaintiff and all other Trainees or Apprentice Installers from making claims for overtime pay by communicating that complaints would subject them to termination of employment.

55.     When Plaintiff completed the training program and was promoted to an Installer position under a piece rate compensation plan, Defendant continued its scheme to avoid the overtime wage requirement of the FLSA by either misclassifying him and all other Piece rate workers as exempt from overtime, or by willfully falsifying time records and willfully refusing to pay overtime wages for all hours worked over 40 in each and every work week.

56.     Defendants falsely represented to Plaintiff, and other piece rate workers, including Richard Reyes and all other opt in Plaintiffs in the collective action ***RICHARD REYES, individually and On behalf of all others similarly situated v. STRADA SERVICES INC. d/b/a Strada Electric and Security*****, Case No: 8:21-cv-00976, MDFL** that piece rate workers are not legally entitled to overtime premiums or overtime wages.

57.     Defendants instructed, required and permitted Plaintiff and all others similarly situated to suffer to work off the clock without being paid for all hours

worked.  By doing so, Plaintiff and other installers/apprentices were intentionally denied overtime premiums for hours worked over 40 in each and every respective work week.

58.     Defendants have willfully violated, and continue to violate, §207 of the FLSA by failing to pay Plaintiff and others similarly situated overtime compensation for all hours worked in excess of forty (40) per week.

59.     Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of FLSA §207 that are complained of herein have been practiced and imposed upon all workers in the Strada Training program working under the job titles of Trainees or Apprentice Installers.

60.     The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. §207(a)(1).  Although the FLSA provides for certain exemptions to the mandates of paying overtime compensation, no exemption applies in the instant matter, and Defendant has willfully violated the FLSA by not paying Plaintiff and other Trainees or Apprentice Installers for all of their overtime hours worked.

61.     Moreover, pursuant to the FLSA and DOL regulations, Plaintiff and all other Trainees or Apprentice Installers, as hourly paid laborers, are required to be

paid a premium for all overtime hours worked, at one and one half times their regular rates of pay for all hours worked over forty (40) in each and every workweek.

62. Defendants knew the overtime wage requirements of the FLSA applicable to these hourly, paid, non-exempt apprentice or trainee employees and continued to unlawfully and intentionally steal their earned wages and refuse to pay overtime compensation, despite numerous lawsuits and payment of thousands of dollars in back wages for unlawfully withholding wages to its employees from numerous lawsuits.

63. Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

64. Plaintiff and members of the Class were, and continue to be, required to work more than forty (40) hours a week during the course of their training or apprentice program with Defendants.

65. Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendants' failure to pay overtime compensation was and is a knowing and willful violation of the overtime wage requirements of the FLSA.

66. The Defendants' practices are clearly unlawful, and Defendants knew it because it faced numerous lawsuits and claims from other workers, in the cases

of:  *Vasquez v. Strada Services Inc, Case no. c:-18-CV-01288; Serna v. Strada Services Inc., case no- CV-28911-TPB; Vargas v. Strada Services Inc., case no. 6:19-1892-EJK,*  all filed in the United States District Court, MIDDLE DISTRICT OF FLORIDA.

67.    Despite having to pay many thousands of dollars in stolen overtime wages to these former piece rate employees, and others who joined or filed consents, Defendants refused to change its unlawful pay practices and continued with its scheme to avoid its obligations under the FLSA to pay a premium to non-exempt, piece rate workers as required by the FLSA.

68.    Additionally, Defendant Strada is currently facing another FLSA collective action filed on behalf of all its piece rate Installers who, *again*, allege that Defendant Strada is denying them their lawful overtime compensation and that Defendant: informed them they were FLSA exempt because they were piece rate workers, Defendant edited or shaved their timesheets, or Defendant simply filled out the timesheets of the piece rate workers to ensure their weekly work hours did not exceed 40.  See *RICHARD REYES, individually and On behalf of all others similarly situated v. STRADA SERVICES INC. d/b/a Strada Electric and Security*, Case No: 8:21-cv-00976, MDFL.

69.    Taken together - the three cases that already settled, the collective action currently pending in the US Middle District of Florida, and the allegations

herein - clearly demonstrate that Defendants' repeated failure to pay its employees their correct overtime wages is an intentional and willful scheme devised by Defendants to evade its FLSA obligations and save millions of dollars in labor costs.

70.     Thus, Plaintiff herein alleges individually and on behalf of the members of the putative Class of similarly situated, that Defendants intentionally and willfully maintained an unlawful scheme to evade and avoid their FLSA wage obligations.

71.     Accordingly, Plaintiff and the putative Class of similarly situated seek, and are entitled to recover, all overtime pay due from overtime hours worked for which compensation was not paid, an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## COLLECTIVE ACTION ALLEGATIONS

72.     Plaintiff brings this action individually and on behalf of all others similarly situated who worked for Strada in the Strada Training or Apprentice Program under any title, such as Trainees or Apprentice Installers, referenced herein as the putative class, as a collective action pursuant to the Fair Labor Standards Act. 29 USC §216(b).

73.     In Y*oung v. Cooper Cameron Corp.*, the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness

need be made." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

74.     Still, despite the *Young* court's ruling, the members of the Class are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case.  While the exact number of the members of the putative Class is unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff believes that there are 200 or more individuals in the defined class within the three (3) year relevant class period.

75.     Plaintiff will fairly and adequately protect the interests of the putative Class of similarly situated Trainees or Apprentice Installers, and has retained counsel that is experienced and competent in class/collective actions and employment litigation.  Plaintiff has no interest that is contrary to, or in conflict with, members of the putative Class.

76.     A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

77.     A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the Class likely will not obtain redress of their injuries and Defendant will retain the proceeds from its violations of the FLSA.

78.     Furthermore, even if any member of the Class could afford individual litigation against the Defendant, it would be unduly burdensome to the judicial system.  The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.  Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

79.     There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.  The question of law and fact common to each of the Class predominate over any questions affecting solely individual members of the action.  Among common questions of law and fact are:

a    Whether Defendants employed members of the Class within the meaning of the applicable provisions of the FLSA;

b    Whether Plaintiff and members of the Class were expected, permitted, and encouraged to regularly work hours in excess of

forty (40) per week off the clock and without being paid a premium for all hours worked;

c   Whether Defendants unlawfully either edited or shaved overtime hours from employees time records, or required and instructed employees to shave, edit and remove or not submit overtime hours on their own weekly time records;

d   Whether Defendants knowingly failed to maintain and preserve accurate and true records of all hours worked and wages earned by Plaintiff and the Class;

e   Whether Plaintiff and the Class have sustained damages, and if so, what is the proper measure of such damages;

f   Whether Defendants willfully and with reckless disregard, underpaid Plaintiff and the class of similarly situated, even when they did pay a premium for overtime hours worked;

g   Whether Defendants maintained a De Facto, unlawful policy against paying overtime wages to piece rate workers and against piece rate workers from claiming or reporting all hours worked; and

h   Whether Defendants permitted Plaintiff and all others similarly situated to suffer to work off the clock.

80.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a collective action.

## COUNT  I
## FAILURE TO MAINTAIN TRUE AND ACCURATE RECORDS OF HOURS WORKED

81.     The foregoing paragraphs are realleged and incorporated as if fully set forth herein.

82.     All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

83.     Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendant.

84.     However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

85.     With respect to an employee subject to the FLSA provisions, the following records must be kept:

a.     Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

b.     Hour and day when workweek begins;

c.     Regular hourly pay rate for any week when overtime is worked;

d.     Total hours worked each workday and each workweek;

e.     Total daily or weekly straight-time earnings;

f.     Total overtime pay for the workweek;

g.     Deductions from or additions to wages;

h.     Total wages paid each pay period; and

i.     Date of payment and pay period covered

86.     Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. §215(a)(5); *See also, Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792 (10th Cir. 1976).

87.     Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the FLSA.  An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked. *See Wirtz v. First State Abstract Ins. Co.,* 362 F.2d 83 (8th Cir. 1966); *Boekemeier v. Fourth Universalist Soc'y,* 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

88.     An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

89.     Defendant has failed to accurately record, track and report the Plaintiff's work hours, and for the Class of similarly situated members' time and work hours as required under the FLSA.

90.     Defendant has failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR §516.2 and 29 U.S.C. §§211, 216 and related laws.

## COUNT II
## VIOLATION OF § 207 OF THE FLSA

91.     The foregoing paragraphs are realleged and incorporated as if fully set forth herein.

92.     At all relevant times, Defendants employed Plaintiff, and/or each member of the Putative Class of similarly situated, and continues to employ members of the Putative Class, within the meaning of the FLSA.

93.     Upon information and belief, all Trainees or Apprentice Installers were paid under a common and similar compensation plan and scheme, comprised of an hourly rate of pay.

94.     Defendants maintained a De Facto policy and practice of refusing to pay overtime compensation to its Trainees or Apprentice Installers for the hours worked in excess of forty (40) hours per week.

95.     Defendants intimidate, coerce, and dissuade Trainees or Apprentice Installers from reporting or claiming overtime hours (hours over forty (40) in a workweek) for fear of scrutiny, discipline, management displeasure, not completing the training program, or termination, meanwhile, requiring Trainees or Apprentice Installers to complete jobs regardless of the number of hours required to do so.

96.     Defendants' management is well aware of employees working more than 8 hours in a day, more than 40 hours in a week, and well beyond the minimum work schedule of Monday to Friday, 7:00 am until 3:30 pm, and requires these employees to do so.

97.     Defendants do not instruct, order or command employees to leave at the end of their shift time, but, on the contrary, Plaintiff's trainer required him and other Trainees or Apprentice Installers to remain at the jobsite and keep working past the scheduled end of shift off the clock and after clocking out.

98.     As a result of Defendants' unlawful pay practices complained of herein, throughout the three (3) year class period to the present, Defendants have willfully stolen overtime wages from Trainees or Apprentice Installers.

99.     Defendants knowingly and willfully failed to pay Plaintiff and all other members of the Class, overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendants above and beyond forty (40) hours per workweek in violation of the FLSA, in particular 29 U.S.C. § 207.

100.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

101.    Defendants cannot and do not have a good faith basis under the FLSA for its willful actions and conduct of refusing and failing to pay Plaintiff and all similarly situated Trainees or Apprentice Installers lawful rates for all overtime hours worked over 40 hours in each and every workweek, especially since the law is clear and Defendants have had 3 or more similar lawsuits and never corrected its unlawful pay practices.

102.    Plaintiff and the class of similarly situated thus are entitled to, and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present and continuing.

103.    Due to Defendants' willful FLSA violations, Plaintiff alleges on behalf of the members of the Class that they have suffered damages and are entitled to recover from Defendants the unpaid and underpaid overtime compensation due and owing for all hours worked in excess of forty (40) in each and every workweek, an

additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

104.   Plaintiff and the class of similarly situated have suffered financial harm and loss of monies owed to them as a direct and proximate result of Defendants' unlawful pay practices complained of herein.

**WHEREFORE** Plaintiff, CHRISTOPHER GRANT prays for:

a.   An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Join this action as plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of STRADA SERVICES INC. any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b.   An order awarding attorneys' fees and costs pursuant to §216 of the FLSA;

c.   That the Court find Defendants have willfully violated the record keeping requirement of the FLSA and declare their time records both unreliable and false;

d.   That the Court find that Defendants have willfully violated Section 207 of the FLSA by failing to pay premiums for all hours worked over 40 in each and every workweek by Plaintiff and all those who opt in and seek to join this action; and that the Court find that Defendants' violations of the FLSA were and are willful;

e.   That the Court award Plaintiff Grant and the putative Class of all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours in each and every workweek at the correct and lawful rate of pay during the past three (3) years, AND an equal sum as liquidated damages.  In addition, interest on said award pursuant to §216 of the FLSA;

f.   That the Court appoint Mitchell Feldman, Esq. and the firm of Feldman Legal Group as class counsel in the FLSA collective action, and appoint Christopher Grant as class representative for all those similarly situated with the authority to negotiate on behalf of all opt in plaintiffs; and

g.   That the Court award any other legal and equitable relief as this Court may deem appropriate, fair and just.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Filed this 17th day of June 2021.

Respectfully submitted,

*/s/Mitchell Feldman, Esq.*
**Mitchell L. Feldman, Esquire**
Florida Bar No.:  0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366 - Fax: 813-639-9376
Email: feldman@flandgatrialattorneys.com
*Attorney for Plaintiff, and the class Of similarly situated*